UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEX ALBERTO CASTRO,

       Movant,

v.

UNITED STATES OF AMERICA,

       Respondent.

_____/

CASE NO. 1:21-CV-858

HON. ROBERT J. JONKER

## OPINION AND ORDER

### INTRODUCTION

This matter is before the Court on Movant Alex Alberto Castro's motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (ECF No. 1). The government has responded in opposition to the motion (ECF No. 23) and Movant has replied. (ECF No. 25).[1] The Court determines that an evidentiary hearing is unnecessary to the resolution of this case. *See* Rule 8, RULES GOVERNING 2255 PROCEEDINGS; *see also Arredondo v. United States*, 178 F.3d 782 (6th Cir. 1999) (holding that an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). For the following reasons, the Court denies the Section 2255 motion.

### BACKGROUND

#### 1. *Investigation*

Movant was a leader in a sophisticated drug trafficking organization (DTO) that brought

---

[1] Movant has also filed a motion regarding the progression of this case. (ECF No. 26). That motion is rendered moot under this Opinion and Order.

kilogram quantities of narcotics into West Michigan communities. The Sixth Circuit has previously summarized the government's investigation into the DTO as follows:

> In the spring of 2017, DEA agents in Grand Rapids, Michigan, began investigating a drug trafficking ring led by brothers Yusef Phillips and Ray Anthony Lee. Confidential sources told them that Phillips and Lee bought and sold kilogram-level quantities of heroin and cocaine in Grand Rapids, Benton Harbor and Kalamazoo. The investigators gathered evidence against Phillips and Lee, conducting surveillance of them moving packages into and out of two "stash house" locations, recovering drug related products from "trash pulls" at those locations, and making "controlled buys" of drugs from their associates. The agents also observed activity that led them to believe that Phillips and Lee got their drugs from interstate semi-truck shipments. For example, at 4:00 a.m. on July 17, 2017, agents followed Ray Lee's car to a hotel parking lot, where he and Phillips parked near a semi-truck and interacted with the driver. After the meet-up, Phillips and Lee returned to one of the suspected stash houses.
>
> Based on that evidence, the agents obtained authorization to tap Phillips's and Lee's cell phones. They began monitoring Lee's phone ("Target Phone 3") on July 20, 2017 and began monitoring Phillips's phone ("Target Phone 4") on July 27, 2017. Subsequently, they gained authorization to monitor two more phones owned by Lee and one more phone owned by Phillips. The agents monitored those phones until Phillips and Lee were arrested on September 3, 2017. With the assistance of those wiretaps, the government observed Phillips and Lee arrange additional semi-truck shipments of drugs from their supplier on July 31 and September 3, 2017.
>
> On September 3, 2017, the government arrested 17 members of the alleged drug conspiracy and executed 20 search warrants, uncovering approximately $1,300,000, 13 kilograms of cocaine, 19 kilograms of heroin, 1.5 kilograms of fentanyl, 50 pounds of marijuana, three handguns, and an assault rifle. Phillips and Lee cooperated with the government and described the scope of their drug trafficking organization.

*United States v. Castro*, 960 F.3d 857, 861-62 (6th Cir.), *cert. denied*, 141 S. Ct. 575 (2020).

At the time of the takedown, the government knew through the wiretaps that Phillips and Lee obtained drugs from a source in California, but they did not, at that point, know the identity

2

of that source. They soon learned the source was Movant through Messrs. Phillips, Lee, and Cervantes, all of whom decided to cooperate. The Court of Appeals' decision recounts what Phillips told investigators, and would later testify about at trial:

> Phillips testified that, starting in late 2013 or early 2014, Castro sold him heroin, cocaine, and marijuana in kilogram-level quantities. According to Phillips, Castro supplied drugs to him and Lee about once per month until the arrests in September of 2017.
>
> Castro used long-haul truck drivers to move drugs from California to Grand Rapids. Federal agents observed three of these deliveries at a Grand Rapids hotel in the summer of 2017. On September 3, 2017, the agents arrested the truck driver, Salvador Cervantes, who agreed to cooperate with the investigation. Cervantes testified that Castro recruited him to carry drugs in his semi-truck and paid him $1,000 per kilogram delivered over the course of several years.
>
> At trial, the government introduced text messages and recorded conversations between Phillips and Castro that were obtained from the wiretaps on Phillips's cell phone. Phillips testified that he and Castro were discussing drug transactions, including price, quantity, quality, and delivery instructions. Phillips also stated that he and Castro communicated in code to avoid detection, referring to kilograms of heroin as "originals," kilograms of cocaine as "chicas," and thousands of dollars of drug proceeds as "the count." Phillips, Lee, and Cervantes all identified Castro as the speaker on the calls admitted at trial.

*Castro*, 960 F.3d at 861-62.

### 2. Trial

Movant was subsequently charged in a Second Superseding Indictment with a conspiracy to distribute heroin, cocaine, and marijuana (Count 1). (Crim. ECF No. 300).[2] Movant, through counsel, filed several motions, including a motion to suppress wiretap evidence (Crim. ECF No. 280). The Court denied the wiretap motion (Crim. ECF No. 389) and decided the other motions.

---

[2] "Crim. ECF" refers to the docket in Movant's underlying criminal case, *United States v. Castro*, 1:17-cr-193 (W.D. Mich.).

Movant and seven other defendants proceeded to a jury trial. As detailed in the government's brief (ECF No. 23, PageID.107-113), the government presented extensive proofs regarding Movant's role in the DTO and the quantity of narcotics he was responsible for. At the conclusion of trial, the jury found Movant guilty of the conspiracy charge. (Crim. ECF No, 618, PageID.3980-3981). The matter proceeded to sentencing.

### 3. *Sentencing and Appeal*

The Final Presentence Report ("PSR") determined Movant was responsible for 279,5890.72 kilograms of converted drug weight. (PSR ¶ 153, Crim. ECF No. 710, PageID.4796). This was magnitudes above the 90,000 kilograms of converted drug weight that were necessary to trigger the highest base offense level of 38. *See* U.S.S.G. § 2D1.1(c)(1) (2018). A total of eight additional levels were added for Movant's operation of a continuing criminal enterprise (two levels, PSR ¶ 154); leadership (four levels, PSR ¶ 156); and obstruction of justice (two levels, PSR ¶ 157). Accordingly, Movant's adjusted offense level was 46 (PSR ¶ 158). Because this was three levels above the highest level on the chart, Movant's total offense level for guideline purposes was 43. (PSR ¶ 161). Movant further scored 19 criminal history points (PSR ¶ 178) resulting in a criminal history category of VI, again the highest on the chart. Movant's guidelines called for a sentence of life imprisonment.

Before sentencing, Movant objected that he should be found responsible for only 62,400 kilograms of converted drug weight, and that his base offense level accordingly should be reduced two levels to level 36. He further objected to the three enhancements and argued that his guideline range should be 324 to 405 months imprisonment (LO 36, CHC VI). (Crim. ECF No. 713). The government did not object to the guidelines as scored. The Court resolved the defense objections at sentencing and adhered to the guidelines as calculated by the Probation Officer. With respect

4

to quantity, the Court was satisfied by a preponderance of the evidence that Movant was easily responsible for an amount of narcotics that would trigger the base offense level of 38. The Court also overruled the defense objection to the four-level leadership enhancement, (Crim. ECF No. 842, PageID.8746), to the two-level criminal enterprise enhancement under U.S.S.G. § 2D1.1(b)(16) (*Id.* at PageID.8749), and to the obstruction of justice enhancement. (*Id.* at PageID.8749-8753). The Court acknowledged that the latter objection presented a closer call, but it observed that even if the enhancement did not apply, Movant's total offense level would still be level 43 based on the other rulings the Court made. (*Id.*).

Thereafter the Court found a basis in the record for a below-guideline sentence and imposed a sentence of a total of 528 months, consisting of 504 months on the conspiracy charge and a consecutive 24 months on a supervision violation. Judgment entered on February 15, 2019. (Crim. ECF No. 729). Thereafter Movant appealed the Court's decision that denied his motion to suppress evidence stemming from the wiretap, and the application of the obstruction enhancement to his sentence. The Court of Appeals affirmed the Court's decisions in both respects. *United States v. Castro*, 960 F.3d 857 (6th Cir. 2020). The Supreme Court denied Movant's petition for a writ of certiorari. 141 S. Ct. 525 (2020).

4. *2255 Motion*

Movant timely filed this Section 2255 action on October 4, 2021. (ECF No. 1). His motion asserts trial and sentencing counsel were ineffective in several respects, as follows:

1. Counsel failed to challenge the introduction of evidence recovered from a semi-truck during the takedown of the DTO.

2. Counsel failed to object to the makeup of the jury.

3. Counsel failed to present an alibi defense.

4. Counsel failed to challenge the wiretap authorizations.

5

     5. Counsel failed to argue judicial bias.

     6. Counsel failed to argue the government violated its discovery obligations.

     7. Counsel failed to challenge drug weight at sentencing.

     8. Counsel failed to impeach the cooperating co-defendants at trial.

     9. Counsel failed to follow Movant's requests regarding jury selection.

     10. Counsel failed to object to the introduction of government exhibits at trial.

     11. Counsel failed to challenge the warrants signed by Task Force Officer Schaffer.

(ECF No. 1).

Trial and appellate counsel have both filed affidavits (ECF Nos. 17 and 18) and the Government has filed a brief in opposition to the motion. (ECF No. 23). Movant has filed a reply (ECF No. 25).

## LEGAL STANDARDS AND DISCUSSION

A federal prisoner may challenge his sentence by filing in the district court where he was sentenced a motion under 28 U.S.C. § 2255. A valid section 2255 motion requires a movant to show that "the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). Section 2255 affords relief for a claimed constitutional error only when the error had a substantial and injurious effect or influence on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Non-constitutional errors generally are outside the scope of section 2255 relief, and they should afford collateral relief only when they create a "fundamental defect which

6

inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotation marks omitted).  As a general rule, a claim not raised on direct review is procedurally defaulted and may not be raised on collateral review absent a showing of either (1) cause and actual prejudice; or (2) actual innocence.  *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 532 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).  A motion to vacate under Section 2255 is not a substitute for direct appeal.  *United States v. Duhart*, 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973).

To establish a claim of ineffective assistance of counsel, a movant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant in a way that led to an unreliable or fundamentally unfair outcome.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, and viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential."  *Roe v. Flores-Ortega*, 528 U.S. 460, 477 (2000) (internal quotation marks omitted).  Counsel is not ineffective unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  To establish prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *Id.* at 694*; see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) ("[T]he threshold issue is not whether [movant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

## DISCUSSION

1. *Pretrial Claims*

    A. *Challenge to Wiretap (Grounds 4 and 5)*

Grounds 4 and of 5 of the motion relate to the government's wiretaps. He claims that the Court was biased against him when it denied the suppression motion, and he faults his counsel for failing to raise that argument. He further faults his counsel for failing to seek suppression of the wiretaps on the basis that that the signatures authorizing the wiretaps were not genuine. Neither argument has merit.

Movant first argues the Court was biased, and therefore could not decide the suppression motion, because the judicial officer deciding the suppression motion was the same officer who had authorized the government's wiretap application. Movant has not demonstrated bias. Generally, a movant's dissatisfaction with a judicial officer's decisions is not a basis for disqualification. *See Liteky v. United States*, 510 U.S. 540, 555 (1994), *Moniz v. Cox*, 512 F. App'x 495, 501-02 (6th Cir. 2013). And the Sixth Circuit Court of Appeals has rejected the same contention that Movant makes here namely, that the judge who originally authorizes the wiretap should not make the suppression decision. *See United States v. Lawson*, 780 F.2d 535, 540 (6th Cir. 1985) (citing *United States v. Murray*, 762 F.2d 1013 (6th Cir. 1985); *Southerland v. Irons*, 628 F.2d 978 (6th Cir. 1980). Thus, there was no basis for a change of venue or disqualification and his counsel did not render ineffective assistance by declining to seek disqualification.

Movant's second argument with respect to the wiretaps also fails. Here Movant asserts that rather than challenge necessity (which he lost on), counsel should have argued the wiretap application contained a forged signature. *Strickland* recognizes the presumption of favoring counsel's strategic choices in deciding what specific arguments to raise and what to omit.

*Strickland*, 466 U.S. at 689. Accordingly, "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire [proceeding] with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). Even if Movant could meet the first prong of reasonableness under *Strickland*, he cannot demonstrate prejudice. "Before an application may be filed seeking an order from a federal court for interception of wire or oral communications, § 2516(1), as amended, requires that the 'The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division or National Security Division specially designated by the Attorney General," authorize the filing of the application." § 4:10. *Authorization to file by United States Attorney General or designated high-level officials,* 1 LAW OF ELECTRONIC SURVEILLANCE § 4:10 (quoting 18 U.S.C. § 2516(1)). Movant offers nothing than his own, lay-person suspicions to claim that the signatures on the wiretap authorizations are not genuine. This is insufficient to support any challenge to the wiretap authorization. *See id.* (citing *United States v. Torres*, 908 F.2d 1417, 1422 (9th Cir. 1990) (noting the party challenging the authenticity of signatures bears the initial burden of production)).

### B. Search of Semi-Truck (Ground 1)

Movant also claims that his counsel should have filed a motion to challenge the government's search of the semi-truck driven by Mr. Cervantes. This contention is without merit.

Any motion filed by Movant to suppress the evidence taken from the semi-truck during the September 3rd stop would have failed because Movant lacked standing to challenge the search of the vehicle and officers had probable cause in any event. Counsel avers he explored the possibility of filing a motion to suppress but ultimately determined not to file a motion after concluding that

Movant did not have standing to challenge the search and seizure of the trailer. (Lombard Aff. ¶ 3, ECF No. 17, PageID.88). This is plainly correct. Even in this motion, Movant does not contend he had any privacy or possessory interest in the semi-truck when it was stopped. He therefore lacked standing to bring a motion. And even if standing existed, any motion surely would have failed on the merits. At the time of the search, officers had an arrest warrant for the driver, Mr. Cervantes, and had watched as Mr. Cervantes used the truck to perform a drug drop off to Mr. Phillips and Mr. Lee on September 3rd, 2017. Accordingly, this ground for relief is without merit.

### C. Discovery (Ground 6)

In Ground 6, Movant claims, in conclusory fashion, that the government failed to disclose favorable evidence that was allegedly requested by the defense and not provided. He says that this contention somehow amounts to ineffective assistance of counsel. (ECF No. 1, PageID.15). Movant does not identify which evidence he says was requested, and not provided to his defense and in this he falls far short of his burden under *Strickland*. Against Movant's conclusory assertions, the record contains specific indicia that the government met its discovery obligations. In his affidavit, counsel for Movant attests that he filed a discovery motion (Lombard Aff. ¶ 8, ECF No. 17, PageID.89; *see also* Crim. ECF No. 437). The Court ruled on the motion from the bench, pretrial, noting that there was nothing that would indicate the government had not lived up to its discovery obligations to that point, and that the Court was satisfied the normal course of discovery for other material, things like *Jencks*, etc., was sufficient. Counsel avers he is unaware of any material that he requested and did not receive. (Lombard Aff. ¶ 8). The record accordingly believes Movant's vague contention that his counsel failed to obtain adequate discovery.

## 2. Trial Claims

### A. Jury Selection (Grounds 2 and 9)

In Grounds 2 and 9, Movant makes several arguments with respect to the composition of the jury. Across these two grounds he says counsel did not listen to him during jury selection; failed to request the Court strike a sleeping juror; and failed to object to the racial composition of the jury. These arguments are all meritless.

With respect to Movant's first argument, trial counsel admits that Movant requested that he strike one juror and keep another during jury selection. Counsel says he did not follow Movant's wishes, relying instead on his own "experience, expertise, and strategy to choose the best jury for the case." (Lombard Aff. ¶ 11, ECF No. 17, PageID.90). Counsel's decision to exclude one potential juror over another in this case is patently one of trial strategy and Movant's conclusory disagreement with counsel's strategic decisions do not support a claim of ineffective assistance of counsel. Indeed, Movant fails to demonstrate that counsel's decision was in any way unreasonable.

Movant's second argument is that his counsel should have requested that the Court strike a juror who he claims slept during trial. The record shows that during a break in closing arguments, counsel for one of Movant's co-defendants, Defendant Tatum, asked the Court to replace a juror whom she suspected of sleeping during her argument. Before ruling, the Court asked the other parties for their positions. The government opposed Defendant Tatum's request. Some defendants joined in Defendant Tatum's request; others, including counsel for Movant, opposed the request. (Crim. ECF No. 826, PageID.8491-8496). The decision of Movant's counsel not to request the juror be replaced was undoubtedly a strategic one. There are numerous reasons why counsel may not have wanted the juror replaced. He may have felt that the sitting juror was more favorable to

11

his client than the alternate, for example. As counsel for another defendant put it: "Be careful what you ask for. You might get it." (*Id.* at PageID.8493). But even if it was unreasonable for counsel not to request the strike, Movant cannot show prejudice because the Court denied the request from Defendant Tatum. "[A] juror who sleeps through much of the trial testimony cannot be expected to perform his duties." *United States v. Warner*, 690 F.2d 545, 555 (6th Cir. 1982). But this was not one of those cases. The Courts own observations, consistent with the descriptions of other counsel, was that the juror (and others) sometimes closed their eyes. But the Court's observed these were brief events only and so the juror's actions did not rise to the level of juror misconduct. Movant's claim, therefore, is without merit.

Finally, with respect to the racial composition of the jury, the Court squarely addressed this matter with the venire during jury selection. (ECF No. 817, PageID.5983-5984). No member of the venire ultimately selected for the jury, indicated that they could not be fair or impartial based on the defendants' race. To the extent Movant assets that his trial counsel was ineffective in failing to object to the jury venire on the grounds that it did not represent a fair cross-section of the community, Movant fails to meet his burden. Movant has not provided any factual support for this claim, and he also cannot show prejudice based upon the alleged failure of his counsel to object because any such challenge would have failed. This Court has previously rejected claims that this District's approved jury plan is unconstitutional. *See United States v. Boulding*, No. 1:08-cr-65, ECF No. 177 (W.D. Mich. June 1, 2009). The Sixth Circuit Court of Appeals also has rejected similar challenges to the constitutionality of this District's system of selecting jurors. *See Beard v. United States*, No. 1:10-cv-411, 2011 WL 777921, at *2 (W.D. Mich. Feb. 29, 2011) (collecting cases). This claim is therefore without merit.

### B. *Alibi Defense (Ground 3)*

Movant next argues that his counsel should have elicited testimony that Movant was in federal custody during some of the time the government claimed the conspiracy existed. Movant says he was prejudiced because counsel failed to present this alibi defense. He was not. Counsel in fact objected to such testimony and asked that the Court instruct witnesses not to mention that Movant had been in custody during this period. (Crim ECF No. 817, PageID.5948). As the government points out, this was an eminently reasonable strategic decision. The government sought to use this information, in part, during Mr. Cervantes' testimony as evidence of the close relationship between the individuals involved in this case. (Crim. ECF No. 817, PageID.5851). By objecting to this testimony, counsel was able to prevent the jury from learning about Movant's conviction that involved delivering drugs into a prison. (Crim. ECF No. 824, PageID.7812-7813).

### C. *Exhibit Objections (Ground 10)*

In Ground 10, Movant faults his counsel for failing to object at trial to the introduction of government exhibits that he says were biased and prejudiced against him. Movant does not identify the exhibits in his principal brief, but in reply he describes exhibits depicting him on a boat, on a hunting trip, and playing paintball. (ECF No. 25, ECF No. 135). It appears Movant also says counsel should have objected to the government's summary exhibit. (*Id.*). Movant cannot meet either *Strickland* prong because these are exhibits that counsel did, in fact, object to. (Crim. ECF No. 817, PageID.5928-5938; 5941). While Movant might disagree with the result, he cannot fault counsel for lodging the objection he requests here. "It is . . . well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exception circumstances, such as an intervening change in the law." *Jones v. United States*, 17 F.3d 790, 796 (6th Cir. 1999). Such exceptional circumstances are not present here.

### D. *Ineffective Cross Examination (Grounds 8 and 11)*

In Grounds 8 and 11 Movant says his counsel should have impeached his cooperating co-conspirators Yusef Phillips, Ray Lee, and Salvador Cervantes. He claims that these witnesses were housed together in the same correctional facility during trial, and brought down in the same vehicle to the courthouse. This, he insinuates, gave the witnesses an opportunity to work together on their testimony to ensure their stories lined up in hopes, he suggests, to obtain a favorable sentence reduction motion from the government. In a related vein, Movant claims in Ground 11 that one of the government's case agents, Task Force Officer Jon Schafer, lied in the Criminal Complaint that led to the charges in this case. He faults his attorney for failing to impeach the officer on this matter and further argues that his counsel should have filed a motion to challenge the Complaint.

These grounds fail because they are conclusively belied by the certified transcript of the trial proceedings. Counsel for Movant conducted a lengthy cross-examination of all three witnesses. Moreover, counsel specifically questioned each of the witnesses about the specific thing Movant claims counsel did not do, namely about the witnesses' facility of incarceration and transportation. (Crim. ECF No. 820, PageID.6779-6782 (Phillips); ECF No. 822, PageID.7303-7309 (Lee); ECF No. 824, PageID,7869-7870) (Cervantes). Then during closing argument, counsel made the argument that Movant seeks here, namely, that the witnesses had worked together to concoct a story. (ECF No. 826, PageID.8412, 8420). For this reason, Movant has not met either prong of *Strickland*.

With respect to Officer Schafer, the record similarly reflects that counsel questioned the officer about the criminal complaint and elicited testimony about mistakes in the document. (Crim. ECF No. 821, PageID.6989-6993). To the extent Movant suggests his counsel should have filed

a motion to dismiss the charges on this basis, he cannot satisfy his *Strickland* burden. Movant was tried under the Second Superseding Indictment, not the Criminal Complaint. Movant identifies no defect in that document, nor does he provide any authority that would indicate the isolated errors in the criminal complaint should be transcribed onto the indictment. To the contrary, "counsel cannot be deficient for failing to challenge a criminal complaint supplanted by an indictment." *Augustin v. United States*, No. 1:09-CR-187, 2018 WL 4323913, at *9 (E.D. Tenn. Sept. 10, 2018). Ample probable cause existed to believe that Movant was part of a conspiracy to transport massive amounts of narcotics into West Michigan. A jury ultimately convicted Movant on that conspiracy charge.

### 3. *Sentencing Claim (Ground 7)*

Lastly Movant argues his counsel rendered ineffective assistance at sentencing by failing to challenge the PSR. He specifically claims that his base offense level was based on false testimony from Messrs. Phillips, Lee, and Cervantes. (ECF No. 1, PageID.16). The record belies Movant's claim. Counsel in fact did object to the PSR. (ECF No. 713). And counsel specifically objected to the base offense level calculation based on the drug quantity attributable to Movant (ECF No. 713, PageID.4836). Moreover, counsel premised his argument on the basis that the testimony from Phillips, Lee, and Cervantes was not credible, which is what Movant says he wanted his attorney to do. (ECF No. 713, PageID.4836-4837). The Court overruled the defense objection, but this does not demonstrate ineffective assistance, and Movant may not relitigate that matter here.

## CONCLUSION

For these reasons, the grounds for relief in the motion fail. Movant fails to demonstrate ineffective assistance of trial counsel, and appellate counsel was not The Court concludes that

Movant's motion under Section 2255 must be dismissed.

Before Movant may appeal the Court's dismissal of his Section 2255 motion, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(B); FED. R. APP. P. 22(b)(1). The Federal Rules of Appellate Procedure extend to district judges the authority to issue certificates of appealability. FED. R. APP. P. 22(b); see also *Castro v. United States*, 310 F.3d 900, 901-02 (6th Cir. 2002). Thus, the Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); FED. R. APP. P. 22(b)(1); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make the required "substantial showing," Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court does not believe that reasonable jurists would find the Court's assessment of Movant's claims debatable or wrong.

**ACCORDINGLY, IT IS ORDERED**:

1. Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 1) is **DENIED**.

2. Movant's request for a certificate of appealability is **DENIED**.

3. Movant's motion for Order (ECF No. 26) is **DENIED AS MOOT.**

Dated:  November 23, 2022                     /s/ Robert J. Jonker
                                              ROBERT J. JONKER
                                              UNITED STATES DISTRICT JUDGE

16